**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

CIVIL ACTION NO. 1:13-cv-12322-MBB

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| MATTHEW P. PLOUFFE and | ) |
| COMMONWEALTH SECOND AMENDMENT, INC. | ) |
| Plaintiffs | ) |
| | ) |
| | ) |
| vs. | ) |
| | ) |
| TOWN OF DIGHTON, A Municipal Corporation, | ) |
| and | ) |
| ROBERT L. MACDONALD, In his Official Capacity | ) |
| as Chief of the Dighton Police Department, | ) |
| Defendants | ) |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS PURSUANT TO**
**FED. R. CIV. P. 12(b)(6)**

The Defendants, Town of Dighton and Robert L. MacDonald, respectfully submit this

Memorandum of Law in support of their Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).

## I.    Introduction

The Complaint, filed pursuant to 42 U.S.C. § 1983, seeks injunctive and declaratory relief

as a result of an alleged violation of the Plaintiffs' right to bear arms under the Second and

Fourteenth Amendments to the U.S. Constitution. The gist of the complaint is that the Defendant

Robert L. MacDonald, Chief of the Dighton Police Department ("MacDonald") suspended the

firearm identification card issued to the Plaintiff Matthew P. Plouffe ("Plouffe") upon finding

that Plouffe violated the provisions of M.G.L. c. 140, § 131L, and consequently took possession

of Plouffe's firearms. As set forth in further detail below, the Complaint must be dismissed

because it fails to state a claim of violation of the Second Amendment rights upon which relief

may be granted.

## II.    Motion to Dismiss Standard of Review

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure a complaint may be dismissed for "failure to state a claim for which relief may be granted."

A complaint must be dismissed if it fails to state a claim "showing that the pleader is entitled to relief." Ocasio-Hernandes v. Fortuno-Burset, 640 F. 3d 1, 11-12 (1st Cir. 2011)(quoting Fed. R. Civ. P. 8(a)(2)). "In order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" Ocasio-Hernandes, 640 F. 3d at 12 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007));

"In resolving a motion to dismiss, a court should employ a two-pronged approach. It should begin by identifying and disregarding statements in the complaint that merely offer 'legal conclusion[s] couched as ... fact[]' or '[t]hreadbare recitals of the elements of a cause of action.'" Ocasio-Hernandes, 640 F.3d at 12 (internal quotation marks omitted)(quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-1950 (2009)). "Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." Id. (citing Iqbal, 129 S. Ct. at 1951). The complaint will survive a motion to dismiss if its factual content states a "plausible, not merely a conceivable, case for relief." Id. (citation omitted).

In evaluating the plausibility of a legal claim the court must "draw on its judicial experience and common sense", although it "may not disregard properly pled factual allegations 'even if ... proof of those facts is improbable.'" Id. (quoting Iqbal, 129 S. Ct. at 1950).

### III.   Facts Alleged in the Complaint

The Complaint makes various allegations that are in the nature of legal conclusions or citations to various case precedent and statutory authority. (See Complaint at ¶¶ 9-21). The facts alleged in the Complaint, which must be accepted as true for the purposes of a Motion to Dismiss, are summarized as follows:

Plouffe is a resident of the Town of Dighton, Bristol County, Massachusetts. (Complaint, ¶ 6). The Defendant Town of Dighton ("Dighton") is a duly organized municipality of the Commonwealth of Massachusetts. (Id. at ¶ 8). Defendant Robert L. MacDonald ("MacDonald"), is the Chief of the Dighton Police Department. (Id. at 8).

As of an unspecified date, Plouffe applied for a firearms identification card ("FID Card") pursuant to M.G.L. c. 140, § 129B; MacDonald approved the application and issued a FID Card to Plouffe. (Id. at ¶ 28).

Plouffe is a 19 year old citizen of the United States . (Id. at ¶¶ 24, 25). He has never been convicted of a felony or misdemeanor crime in any state or federal jurisdiction (Id. at ¶ 22); he is not a user of illegal drugs and is not an alcohol dependant person (Id. at ¶ 23); and he has never been treated for addiction to any controlled substance or habitual drunkenness (Id.). He is not subject to any domestic protection order, restraining order under Massachusetts General Laws chapter 209A, or similar order. (Id. at 26). He is not the subject of an outstanding arrest warrant in any state or federal jurisdiction. (Id. at 27).

On March 26, 2013 at 4:30 p.m., a vehicle operated by Plouffe was stopped by a Dighton Police Officer, namely George L. Nichols Jr. (Id. at 29). A passenger in a vehicle matching the description of Plouffe's vehicle earlier had been involved in a verbal altercation with another

individual. (<u>Id</u>.). Upon approaching the vehicle, Officer Nichols observed a shotgun in the back seat of Plouffe's vehicle. (<u>Id</u>.) Plouffe produced a valid FID Card and Officer Nichols observed that the shotgun was unloaded and equipped with a cable trigger lock. (Id.). The shotgun was returned to Plouffe. (<u>Id</u>.) Officer Nichols inquired of the passenger regarding the earlier verbal altercation, no citations were issued, and the traffic stop was concluded. (<u>Id</u>..)

Sgt. David P. McGuirk of the Dighton Police Department prepared a supplemental report of the March 26, 2013 incident. (<u>Id</u>. at 30). He noted that the shotgun was observed in the back seat of the vehicle, that it was unloaded and locked, and that Plouffe had produced a valid FID Card. (<u>Id</u>.). He also questioned Plouffe's maturity based on his friendship with a younger person, that Plouffe had engaged in target shooting with minors after first obtaining their parents' permission, and that a minor had accompanied Plouffe to clean his gun while under the supervision of another adult who was also a holder of a FID Card. (<u>Id</u>. at 30). Sgt. McGuirk's report contained no criminal allegations but questioned Plouffe's judgment and maturity. (<u>Id</u>. at 31).

On March 27, 2013, Sgt. McGuirk contacted MacDonald regarding the March 26, 2013 incident. MacDonald and Sgt. McGuirk decided that Plouffe's FID Card would be suspended and any possessed weapons would be seized. (<u>Id</u>.. at 32).

On March 27, 2013, MacDonald suspended Plouffe's FID Card. (<u>Id</u>. at 34). His reason for the suspension was that Plouffe "failed to store [his] firearm(s) as required under M.G.L. c. 140 § 131L." The same day, MacDonald and officers of the Dighton Police Department entered Plouffe's residence and seized the following guns, ammunition and related items:

a.      Two (2) non large capacity, pump action shotguns, equipped with tamper-resistant locks;

b.     Ten (10) rounds of .30-06 rifle ammunition;

c.     Five (5) rounds of 12-guage shotgun ammunition;

d.     One (1) muzzle-loading black powder primitive rifle, equipped with a tamper resistant lock;

e.     One (1) 28 inch shotgun barrel;

f.     One (1) box of black powder pellets;

g.     Miscellaneous black powder accessories;

(Id. at ¶ 33).

The complaint does not allege that Plouffe appealed the suspension of his FID Card or that he pursued any administrative or judicial remedies available under Massachusetts law, nor does it allege that the remedies available under Massachusetts law are inadequate. See generally, Complaint; see M.G.L. c. 140, § 129B(5).

## IV.   Argument

### A.   The Complaint Does Not State A Claim Upon Which Relief May Be Granted

The gist of Plouffe's claim for relief is that his Second Amendment right to keep and bear arms was violated when Chief MacDonald suspended his FID Card and took possession of his weapons as a consequence of finding him to have failed to store his firearms as required under M.G.L. c. 140 § 131L, the so-called "storage statute". As set forth below the factual allegations of the complaint, even if accepted as true (as they must be on a 12(b)(6) motion) do not state a Second Amendment violation.

### 1.   The Second Amendment Does Not Preclude The Imposition of a Licensing Requirement on the Rights to Keep and Bear Arms.

The Second Amendment protects an individual's right to keep and bear arms. District of Columbia v. Heller, 554 U.S. 570, 575-626 (2008). The Second Amendment right recognized in Heller is operative against the states through the Due Process Clause of the Fourteenth Amendment. McDonald v. City of Chicago, Ill., 130 S. Ct. 3020, 3050 (2010).

The Second Amendment right to keep and bear arms "is not unlimited". Heller, 554 U.S. 570, 626 (2008). In Heller, the Supreme Court specifically recognized that it was not undertaking an analysis of the full scope of the Second Amendment and that nothing in the decision should "cast doubt" on "longstanding" regulatory measures regarding the possession and sale of firearms. See Heller, 554 U.S. at 626-627 & n. 26.

The law that was struck down in Heller generally banned all handguns and required other lawfully owned guns to be rendered inoperable at all times unless located in a place of business or unless used for lawful recreational activities, Heller, 554 U.S. at 575; thus it was a vastly different law than the law in place in Massachusetts which permits one to possess a firearm so long as he has a duly issued FID Card. Neither the Supreme Court nor the First Circuit has ever held that imposing a licensing requirement on individuals, such as the Massachusetts FID Card requirement, as a predicate to ownership or possession of firearms violates the Second Amendment. See Hightower v. City of Boston, 693 F.3d 61, 71-83 (2012) (holding that neither the revocation of a license to carry firearms nor the Massachusetts licensing scheme for licenses to carry firearms in public violated the Second Amendment). In the Heller case itself, the Court "required the District of Columbia to 'permit the plaintiff to register his handgun and ... issue him a license to carry it in the home,' if the plaintiff was not disqualified." Hightower, 693 F.3d 61, 72 (2012) (internal brackets omitted; emphasis added) (quoting Heller, 128 S. Ct. at 2822). Thus, the right recognized in Heller was not unlimited; to the contrary the Court expressly recognized that the plaintiff was only entitled to possess a license to carry a handgun in his home if he was "not disqualified."

**2.      The Massachusetts Regulatory Scheme Relative to FID Cards Comports with the Requirements of the Second Amendment.**

Generally, possession of an FID Card is required in order for an individual to lawfully possess or own any firearm[1], rifle[2], shotgun[3] or ammunition in Massachusetts. M.G.L. c. 140, § 129C. The requirement to have an FID Card to possess a firearm, rifle, shotgun or ammunition in one's home or place of business has never been held to violate the Second Amendment. See Commonwealth v. McGowan, 464 Mass. 232, 982 N.E. 2d 495, 501-502 (2013) ("We have consistently held, without applying any level of heightened scrutiny, that the decisions in Heller and McDonald did not invalidate laws that require a person to have a firearm identification card to possess a firearm in one's home or place of business, and to have a license to carry in order to possess a firearm elsewhere."); see also Powell v. Tompkins, 926 F. Supp.2d 367, 379-380 (D. Mass. 2013) (finding that Massachusetts imposition of a licensing requirement as a predicate to possessing and carrying firearms did not violate Second Amendment).

FID Cards are issued pursuant to M.G.L. c. 140, § 129B. With respect to the original

---

[1]  "Firearm" is defined generally as " a pistol, revolver, or other weapon of any description ... from which a shot or bullet can be discharged and of which the length of the barrel or barrels is less than 16 inches or 18 inches in the case of a shotgun as originally manufactured." M.G.L. c. 140, § 121.

[2]  "Rifle" is defined as "a weapon having a rifled bore with a barrel length equal to or greater than 16 inches and capable of discharging a shot or bullet for each pull of the trigger. M.G.L. c. 140, § 121.

[3]  "Shotgun" is defined as "a weapon having a smooth bore with a barrel length equal to or greater than 18 inches with an overall length equal or greater than 26 inches, and capable of discharging a shot or bullet for each pull of the trigger." M.G.L. c. 140, § 121.

issuance of an FID Card to an individual applicant, the statute requires the licensing authority[4] to issue the FID Card unless the applicant falls within one of the statute's enumerated categories of ineligible individuals. See M.G.L. c. 140, § 129B(1); Hightower v. City of Boston, 693 F.3d 61, 66 (1st Cir. 2012).

However, the grounds upon which FID Cards may be suspended or revoked are broader than the grounds for denying an FID Card at the time of the original application: "A firearm identification card shall be revoked or suspended by the licensing authority or his designee upon the occurrence of any event that would have disqualified the holder from being issued such card or from having such card renewed **or for a violation of a restriction provided for in this section**." M.G.L. c. 140, § 129B(4) (emphasis supplied). Thus the statute mandates that an FID Card is to be revoked or suspended "for a violation of a restriction provided for in this section." Id. The reference to "restriction provided for in this section" is in addition to "any event that would have disqualified the holder from being issued such card or from having such card renewed." Id.

Among the restrictions set forth in the statute is the requirement that "[a] firearm identification card shall not entitle the holder thereof to possess any rifle or shotgun that is, **or in such manner that is, otherwise prohibited by law**." G.L. c. 140, § 129B(6) (emphasis supplied). This requirement of compliance with the firearms laws is re-iterated in the same statute where it states that "[n]othing in this section shall authorize the purchase, possession or

---

[4] "Licensing authority" is defined as "the chief of police or the board or officer having control of the police in a city or town, or persons authorized by them." M.G.L. c. 140, § 121.

transfer or any weapon, ammunition or feeding device that is, or in such manner that is, prohibited by state or federal law." M.G.L. c. 140, § 129B(14). Therefore, among the "restrictions" that apply to owning and possessing an FID Card under M.G.L. c. 140, § 129B, is compliance with state and federal law relative to the possession of firearms.

Among the laws regulating the manner in which firearms are possessed is M.G.L. c. 140, § 131L, which sets forth requirements for the proper storage of firearms. Said statute declares it unlawful to "store or keep any firearm, rifle or shotgun ... in any place unless such weapon is secured in a locked container or equipped with a tamper-resistant mechanical lock or other safety device, properly engaged so as to render such weapon inoperable by any person other than the owner or other lawfully authorized user." M.G.L. c. 140, § 131L(a).

The storage requirement of M.G.L. c. 140, § 131L has been upheld by the Massachusetts Supreme Judicial Court as consistent with the requirements of the Second Amendment under the U.S. Supreme Court decisions in Heller and McDonald. See Commonwealth v. McGowan, 464 Mass. 232, 982 N.E.2d 495 (2013). The McGowan court concluded that the storage requirements of M.G.L. c. 140, § 131L(a) were constitutional and that Massachusetts may enforce § 131L(a) to protect the health, safety and welfare of its citizens. McGowan, 982 N.E.2d 495, 504-505 (2013).

In sum, the FID Card requirement set forth in M.G.L. c. 140, § 129B, and the storage requirement under M.G.L. c. 140, § 131L, are constitutional, and the requirements of the storage statute are among those "restrictions provided for in this section" which mandate FID Card revocation or suspension if violated under M.G.L. c. 140, § 129B(4).

9

3.    **MacDonald Did Not Violate Plouffe's Constitutional Rights When He Revoked His FID Card and Took Possession of Plouffe's Guns and Ammunition.**

The complaint does not allege that the requirements of M.G.L. c. 140, § 129B are unconstitutional or that any other Massachusetts statute regulating the ownership and possession of firearms is unconstitutional. See Complaint, e.g., ¶¶ 15-28, 36, 46, 47. The Complaint does not allege that the Massachusetts FID Card requirement for possessing a firearm in one's own home is unconstitutional. See generally Complaint. The Complaint does not allege that the requirement under Massachusetts law that one surrender his firearms, rifles, shotguns and ammunition upon the revocation of an FID Card, unless an appeal is pending or the owner transfers the guns to one who is licensed to possess them, is unconstitutional. See Complaint; M.G.L. c. 140, § 129D. In sum, the Complaint does not allege that any provision of the Massachusetts General Laws relative to the ownership and possession of guns is unconstitutional.

Plouffe suggests in his Complaint that violation of M.G.L. c. 140, § 131L cannot serve as a basis to suspend an FID Card; as to this legal claim the Complaint is simply wrong. As described above, violation of M.G.L. c. 140, § 131L, is a basis for suspending an FID Card because among the "restrictions provided for" in the FID Card statute is that the holder thereof is not entitled to possess "any rifle or shotgun ... in such manner that is [] otherwise prohibited by law." M.G.L. c. 140, § 129B(6).

The Complaint posits that MacDonald's decision was "baseless". But it also acknowledges that MacDonald found that Plouffe had violated M.G.L. c. 140, § 131L. Because said finding mandated the revocation or suspension of the FID Card, the suspension of Plouffe's FID Card clearly had an ample and legitimate basis.

To the extent that the allegations of the Complaint that MacDonald's actions were

"baseless" posit a procedural or substantive error by MacDonald, it is notable that the Complaint does not allege a violation of due process requirements.[5]

Although the Complaint alleges that the seizure of Plouffe's guns and ammunition is a Second Amendment violation, Plouffe was required to surrender his guns under M.G.L. c. 140 § 129D ("Upon revocation, suspension or denial of an application for a firearm identification card pursuant to the provisions of section one hundred and twenty-nine B ... the person whose application was so revoked, suspended or denied shall without delay deliver or surrender, to the licensing authority where he resides, all firearms, rifles, shotguns and machine guns and ammunition which he then possesses unless an appeal is pending."). According to the Complaint, Plouffe was disqualified from possessing his weapons when his FID Card was suspended, and the statute that mandated this outcome, M.G.L. c. 140, § 129B, is not challenged in the Complaint.

Plouffe may have avoided the requirement to surrender his guns by appealing MacDonald's decision. See M.G.L. c. 140, § 129D. See Pasqualone v. Gately, 422 Mass. 398, 662 N.E.2d 1034, 1038-1039 (Mass. App. Ct. 1996) (recognizing that the obligation to turn over firearms is suspended during the pendency of an appeal of a decision revoking a license under M.G.L. c. 140, § 129B). After surrendering his guns and ammunition, Plouffe could have designated a third party for MacDonald to transfer his guns and ammunition to, and MacDonald would have been required to transfer the guns to that party, as long as the person was legally

---

[5]   The Complaint references the Fourteenth Amendment, but only as it serves as the vehicle for incorporating the Second Amendment right to keep and bear arms against the states. See Complaint ¶¶ 47,48 (referencing the right to keep and bear arms as a right under the "Second and Fourteenth Amendments to the U.S. Constitution").

permitted to take possession of the guns and ammunition. See M.G.L. c. 140, § 129D.

Plouffe could have appealed MacDonald's decision suspending his FID Card to the Massachusetts District Court by filing a petition for judicial review within 90 days after receipt of notice of MacDonald's decision. M.G.L. c. 140, § 129B(5). If he appealed, Plouffe would have been entitled to an evidentiary hearing. See Hightower v. City of Boston, 693 F.3d 61, 86 (1st Cir. 2012 ) (citing Godfrey v. Chief of Police, 35 Mass. App. Ct. 42, 616 N.E.2d 485, 487 (1993)). The statutory appeal procedure would have met constitutional due process requirements. See Hightower, 693 F.3d at 83-87 (holding that the revocation scheme for licenses to carry firearms, both pre-deprivation and post-deprivation, met the requirements of due process). The reviewing court would have been empowered to direct that the FID Card be reinstated if it found that there was no reasonable ground for suspending it and that the petitioner was not prohibited by law from possessing the same. M.G.L. c. 140, § 131(f). Despite the process available to him Plouffe declined to exercise his right under state law to challenge MacDonald's decision. See generally, Complaint (containing no allegation that Plouffe appealed the decision to the District Court). Plouffe does not allege that the post-deprivation process available to him was inadequate.

The Defendants respectfully submit that Plouffe's purported aggrievement relates to his failure to pursue any state law remedies, as the process that he failed to avail himself of was adequate and fully consistent with constitutional requirements. The injunctive and declaratory relief he is seeking amounts to a request to by-pass the process provided under state law and to create a new process using this court and an alleged deprivation of Second Amendment rights as his vehicle. However, there was no violation of Second Amendment rights in this case because the FID Card requirements of Massachusetts law comport with the Second Amendment, and

MacDonald's finding that Plouffe violated M.G.L. c. 140, § 131L mandated the suspension of the FID Card. The procedure for challenging a license revocation or suspension has been held lawful by the First Circuit in the <u>Hightower</u> case, and the Plaintiff here should not be allowed to convert his failure to follow that process into a new constitutional cause of action under 42 U.S.C. § 1983.

<div align="center">

**V. Conclusion.**

</div>

For the foregoing reasons the Defendants, Town of Dighton and Robert L. MacDonald, request that this Court dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.

<div style="margin-left:40%">

Respectfully submitted,
For the Defendants Town of Dighton and
Robert L. MacDonald
By their attorneys,

/s/ David T. Gay
/s/ Matthew J. Costa
_____
David T. Gay, Esquire
BBO #187460
Matthew J. Costa, Esquire
BBO #669762
GAY & GAY, P.C.
73 Washington Street
P.O. Box 988
Taunton, MA 02780
(508) 822-2071
Email: david@ggflaw.com
Email: matthew@ggflaw.com

</div>

Dated: October 16, 2013

## <u>Certificate of Service</u>

I hereby certify that the document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non registered participants on October 16, 2013.

/s/ Matthew J. Costa

_____

Matthew J. Costa, Esquire
BBO #669762
GAY & GAY, P.C.
73 Washington Street
P.O. Box 988
Taunton, MA 02780
(508) 822-2071