**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

MATTHEW P. PLOUFFE and
COMMONWEALTH SECOND
AMENDMENT, INC.

                       Plaintiffs

-against-                                     CIVIL ACTION NO. 1:13-cv-12322-RGS

ROBERT L. MACDONALD,
in his Official Capacity as
Chief of the Dighton Police Department,
                       Defendant

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT**
**TOWN OF DIGHTON AND ROBERT L. MACDONALD'S MOTIONS TO DISMISS**

REQUEST FOR ORAL ARGUMENT

Come now the plaintiffs, Matthew P. Plouffe and Commonwealth Second Amendment, Inc., by and through undersigned counsel, and submit their memorandum of points and authorities in opposition to defendant Town of Dighton and defendant Robert L. MacDonald's motion to dismiss.

Dated: October 30, 2013                                  Respectfully submitted,

                                                           Matthew P. Plouffe and
                                                           Commonwealth Second Amendment, Inc.
                                                           by their attorney,

                                                           by their attorney,

                                                           <u>/s/ Matthew P. Trask</u>
                                                           Matthew P. Trask, Esq.
                                                           BBO #: 673733
                                                           Kelsey & Trask, P.C.
                                                           160 Speen Street | Suite 202
                                                           Framingham, MA 01701
                                                           T: 508.655.5980
                                                           F: 508.655.5981
                                                           Email: mtrask@kelseytrask.com

# TABLE OF CONTENTS

INTRODUCTION & SUMMARY OF ARGUMENT ............................................................................... 3

LEGAL & FACTUAL BACKGROUND .............................................................................................. 3

STANDARD OF REVIEW ................................................................................................................ 6

ARGUMENT ................................................................................................................................... 6

    1.    Strict Scrutiny Is Warranted on a "Fundamental Rights" Theory ....................................... 6

    2.    The Second Amendment is Fully Applicable Against the Commonwealth of Massachusetts ......... 9

    3.    The Defendants' Actions, M.G.L. c. 140 § 129B Notwithstanding, Violated the Plaintiff's Constitutional Rights Because an FID is a Shall Issue License and The Plaintiff Was Eligible to Hold Such License. ................................................................................................................ 11

        A.    The Firearms Identification Card – M.G.L. c. 140 s. 129B ........................................ 11

        B.    The "Safe Storage Law" – M.G.L. c. 140 s. 131L ..................................................... 11

        C.    The Defendants' Use of an Unsupported Violation of the "Safe Storage" Law As Grounds For Revoking the Plaintiff's FID Is Not Supported By Statute or the Constitution. ............... 12

        D.    The Defendants' Own Records Demonstrate the Plaintiff Fully Complied With M.G.L. c. 140 § 131L. ............................................................................................................................ 14

    4.    Plouffe's Decision Not to Appeal the Suspension of His FID in State District Court is Not A Bar to His Pursuit of a 42 U.S.C. § 1983 Claim. ........................................................................ 15

    5.    Due Process Was Insufficient As Applied To The Defendant Following the Suspension of Plaintiff's License. ................................................................................................................ 16

    6.    Suspending Plaintiff's FID Card in Violation of State Law Offends the Second Amendment ....... 17

    7.    If Necessary, Plaintiffs Respectfully Request and Opportunity to Amend the Complaint. ............ 18

CONCLUSION ............................................................................................................................ 18

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT TOWN OF DIGHTON AND ROBERT L. MACDONALD'S MOTION TO DISMISS

## INTRODUCTION & SUMMARY OF ARGUMENT

The defendants' motion to dismiss should be denied, as the plaintiffs have alleged facts sufficient to establish both their right to relief and standing to claim such relief. The plaintiffs are entitled to relief on two separate grounds:

<u>First</u>, the Second Amendment protects citizens of the Commonwealth. <u>Second</u>, the actions of the defendants violated state law, vis-à-vis the illegal misapplication of the Commonwealth's firearms laws and seizure of the plaintiff's firearms (even if such laws pass constitutional muster), and such action violated the plaintiffs' Second Amendment rights as incorporated by the Equal Protection clause of the Fourteenth Amendment. The application of the Commonwealth's firearm laws are subject to strict scrutiny under this analysis because the defendants are inhibiting a core fundamental right. Plaintiff raises a cognizable claim that the actions of the defendant violated plaintiffs Second Amendment protections as incorporated by the Equal Protection clause under the Fourteenth Amendment.

As the plaintiffs have alleged facts sufficient to establish a violation of 42 U.S.C. § 1983, the defendant's motion to dismiss must be denied.

## LEGAL & FACTUAL BACKGROUND

At the time of the defendant's actions, Plaintiff Matthew P. Plouffe possessed a valid firearms identification card issued by defendant MacDonald pursuant to M.G.L. c. 140 § 129B.

The plaintiff is not, and has never been legally disqualified from obtaining an FID under M.G.L. c. 140 § 129B, because Mr. Plouffe has never been convicted of a felony or any other disqualifying misdemeanor in any state or federal jurisdiction; he is not a user of illegal drugs

and is not an alcohol dependant person; he has never been treated for addiction to any controlled substance or habitual drunkenness; he is 19 years old; he is a citizen of the United States of America; he is not subject to a domestic protection order, 209A restraining order or similar order; and he is not the subject of an outstanding arrest warrant in any state or federal jurisdiction.

On March 26, 2013 at 4:30 p.m., a vehicle operated by Mr. Plouffe was stopped by Dighton Police Officer George L. Nichols, Jr. Officer Nichols observed an unloaded shotgun, equipped with a cable trigger lock in the back seat of the car[1]. The plaintiff produced a valid firearms identification card, and the Officer noted that the shotgun was unloaded and equipped with a trigger lock. The shotgun was returned to the Plaintiff.

A supplemental report to the March 26, 2013 incident was prepared by Sgt. David P. McGuirk of the Dighton Police Department. Said supplemental reported noted that Officer Nichols had observed the Plaintiff's shotgun in his vehicle, that the shotgun was unloaded and locked, and that the Plaintiff immediately produced a valid FID. Sgt. McGuirk then expressed his distaste that the Plaintiff had, among other things, befriended boys younger than he (questioning the Plaintiff's "maturity"); that the Plaintiff (a licensed adult) had engaged in target shooting with minors after obtaining their parents' permission first; and had permitted a minor to accompany the Plaintiff to clean his shotgun under the supervision of another licensed adult.

Despite questioning the Plaintiff's "judgment" and "maturity", Sgt. McGuirk's report makes no allegations of a criminal nature against the Plaintiff. In fact, at no time were criminal charges, including a violation of M.G.L. c. 140 § 131L or M.G.L. c. 131 § 63 brought against the plaintiff.

---

[1] The Plaintiff was lawfully transporting the shotgun at issue. Pursuant to M.G.L. c. 131, s. 63, "no person...shall have in his possession or under his control in or on any vehicle or aircraft a loaded shotgun or rifle."

On March 27, 2013, Sgt. McGuirk contacted Chief MacDonald regarding the March 26, 2013 incident. The Defendant and Sgt. McGuirk decided thereafter that "[the Plaintiff's] FID would be suspended and any possessed weapons would be seized". On March 27, 2013, the Defendant, and/or officers from the Dighton Police Department, acting under the direction of the Defendant, arrived at the Plaintiff's residence and seized the Plaintiff's property, including Two (2) non-large capacity, pump action shotguns, equipped with tamper-resistant locks; Ten (10) rounds of .30-06 rifle ammunition; Five (5) rounds of 12-guage shotgun ammunition; One (1) muzzle-loading black powder primitive rifle[2]; One (1) 28 inch shotgun barrel[3]; One (1) box of black powder pellets; and Miscellaneous black powder accessories.

On March 27, 2013 the Plaintiff's firearms license was "suspended." The stated reason for the suspension was that [the Plaintiff] "failed to store your firearm(s) as required under M.G.L. c. 140 § 131L". Despite this claim, (a) the plaintiff was never adjudicated to have violated M.G.L. c. 140 § 131L; (b) the Dighton Police Department did not seek the issuance of a criminal complaint on M.G.L. c. 140 § 131L; (d) no criminal complaint issued pertaining to the plaintiff's alleged violation; and (e) according to the facts contained Dighton Police Department's own records, the plaintiff did not violate M.G.L. c. 140 § 131L, because, at all times, the Plaintiff's shotgun was equipped with a tamper-resistant mechanical lock or other safety device.[4]

---

[2] M.G.L. c. 140 s. 129B does not require a Firearm Identification Card to possess a muzzle-loading firearm. *See* M.G.L. c. 140 § 121.

[3] A stand-alone shotgun barrel is not capable of discharging a shot, and does not meet the definition of "shotgun" per M.G.L. c. 140 s. 121. No license is required to possess it under the laws of the Commonwealth of Massachusetts.

[4] Section 131L states "[i]t shall be unlawful to store or keep any firearm, rifle or shotgun…in any place unless such weapon is secured in a locked container **or equipped with a tamper-resistant mechanical lock** or other safety device, properly engaged so as to render such weapon inoperable by any person other than the owner or other lawfully authorized user." (Emphasis added).

## STANDARD OF REVIEW

In order to survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 555 (2007). In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000). Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. See, Nollet, 83 F. Supp. 2d at 208.

## ARGUMENT

**1. Strict Scrutiny Is Warranted on a "Fundamental Rights" Theory.**

The Second Amendment secures a fundamental right. McDonald v. City of Chicago, Ill., 561 U.S. 3025, 130 S. Ct. 3020, 3042 (2010) (plurality opinion) & 3059 (Thomas, J., concurring). Assuming, arguendo, that the defendants' contention that the Commonwealth's laws regarding firearms licensing passes constitutional muster vis-à-vis the Second Amendment, the groundless misapplication of those laws to deny the plaintiffs' Second Amendment protections is nevertheless subject to heightened review. Generally, when "fundamental rights" are involved, the Court requires regulations and actions limiting these rights to be justified by a "compelling state interest." See, Kramer v. Union Free School District, 395 U.S. 621, 627 (1969); Shapiro v. Thompson, 394 U.S. 618, 634 (1969); Sherbert v. Verner, 374 U.S. 398, 406 (1963).

Additionally, "classifications affecting fundamental rights are given the most exacting scrutiny." Clark v. Jeter, 486 U.S. 456, 461 (1988) (citation omitted).

The Court in District of Columbia v. Heller, 554 U.S. 570 (2008) clearly indicates that "[i]f all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect." Heller, 554 U.S. at 629 n.27. Therefore, the Court ruled out any application of rational basis review of laws burdening the Second Amendment. Intermediate scrutiny is also not applicable, as it is reserved for "quasi-suspect" cases, City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 442 (1985), where the government's classifications do not relate to enumerated rights or suspect classes, and would thus trigger only un-enhanced rational basis review in the absence of intermediate scrutiny's boost. Romer v. Evans, 517 U.S. 620, 631 (1996). Further, "gun laws that severely restrict the core Second Amendment right identified in Heller-that of "law-abiding, responsible citizens to use arms in defense of hearth and home" should receive exacting scrutiny." United States v. Skoien, 614 F.3d 638 (7th Cir. 2010) (quoting Heller, 554 at 627). This application of strict scrutiny should be expected when laws limit the exercise of a core fundamental right in the Bill of Rights. See, e.g., United States v. Playboy Entertainment Group, Inc., 529 U.S. 803, 813 (2000) (law regulating the content of speech is subject to strict scrutiny). Since Heller, multiple Circuits have grappled with the Court's express avoidance of a standard of review for Second Amendment matters. In these matters, these Courts applied intermediate scrutiny in Second Amendment cases questioning application of laws of the type Heller identified as presumptively lawful. See, United States v. Skoien, 614 F.3d 638 (7th Cir. 2010); United States v. Reese, 627 F.3d 792 (10th Cir. 2010); United States v. Masciandaro, 2011 WL 1053618 (4th Cir. 2011); United States v.

<u>Chester</u>, 628 F.3d 673(4th Cir. 2010). The most important conclusion to note from these decisions, regardless of their flawed logic, is the limited application of intermediate scrutiny to violent felons, drug abusers, and other dangerous individuals when dealing with bars to possession and carrying of handguns outside the home. Therefore, these intermediate scrutiny decisions lend nothing to the matter at hand. The plaintiff here should not be considered a member of this pool of felons, drug abusers, and personae non grata. The plaintiff is, in fact, a law abiding citizen.[5]

The Fourth Circuit applied intermediate, rather than strict scrutiny, to a domestic violence misdemeanant only because it viewed the Second Amendment's core as reaching "law-abiding, responsible citizen[s]," Chester, 2010 U.S. App. LEXIS 26508 at *26. The opinion clearly indicates that strict scrutiny must apply in Second Amendment cases involving ordinary individuals. The Seventh Circuit has further suggested overbreadth is a possible alternative mode of analysis. United States v. Williams, 616 F.3d 685, 693 (7th Cir. 2010); cf. <u>United States v. Yancey</u>, 621 F.3d 681, 685 (7th Cir. 2010) ("felon-in-possession laws could be criticized as "wildly overinclusive"). These determinations are consistent with the understanding that intermediate scrutiny applies to an enumerated right only under circumstances where the right's exercise is "of less constitutional moment." <u>Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n</u>, 447 U.S. 557, 563 n.5 (1980).

The defendant's actions in suspending the plaintiff's FID upon mere allegation, and in direct contravention of M.G.L. c. 140 § 129B are improper, under any level of scrutiny.

---

[5] The plaintiff has not been charged with any crime, let alone convicted, so as to render him a felon or otherwise a member of a class of individuals which may otherwise warrant the application of intermediate scrutiny.

## 2. The Second Amendment is Fully Applicable Against the Commonwealth of Massachusetts

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." District of Columbia v. Heller, 554 U.S. 570, 592 (2008). The Second Amendment "is fully applicable against the States." McDonald v. City of Chicago, Ill., 561 U.S. 3025, 130 S. Ct. 3020, 3026 (2010). The Equal Protection Clause of the Fourteenth Amendment provides that a State shall not "deny to any person within its jurisdiction the equal protection of the laws." As such, the plaintiff is entitled to seek redress of the infringement of his Second Amendment protections under 42 U.S.C. § 1983.

The Supreme Court stated in Heller that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." Heller, 554 U.S. at 626. Defendant opines that the thrust of the plaintiff's complaint is the Commonwealth's licensing and storage laws, and that such laws would survive scrutiny under c.f., Heller. However, the constitutionality of M.G.L. c. 140 § 129B is not challenged in the instant Complaint; only the specific actions of the defendants by impermissibly intruding upon the plaintiffs' Second and Fourteenth Amendment protections under the color of M.G.L. c. 140 §§ 129B, 131L are challenged herein.

Courts have consistently recognized that Heller established the possession of operative firearms for use in defense of the home by qualified, law abiding individuals constitutes the core of the Second Amendment. Hightower v. City of Boston, 639 F.3d 64, 72. See also, United States v. Booker, 644 F.3d 12, 25 n. 17 (1st Cir.2011) ("[W]e note that Heller stated that the Second Amendment 'elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home.' " (quoting Heller, 128 S.Ct. at 2821)), cert.

denied,—— U.S. ——, 132 S.Ct. 1538, 182 L.Ed.2d 175 (2012); See also, United States v. Greeno, 679 F.3d 510, 517 (6th Cir.2012) ("The core right recognized in Heller is 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.' " (quoting Heller,128 S.Ct. at 2821)); United States v. Barton, 633 F.3d 168, 170 (3d Cir.2011) ("At the 'core' of the Second Amendment is the right of 'law-abiding, responsible citizens to use arms in defense of hearth and home.' " (quoting Heller, 128 S.Ct. at 2821)); United States v. Staten, 666 F.3d 154, 158 (4th Cir.2011) ("According to the Court, the core right of the Second Amendment is 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.' " (quoting Heller, 128 S.Ct. at 2821)), cert. denied,—— U.S. ——, 132 S.Ct. 1937, 182 L.Ed.2d 794 (2012); United States v. Reese, 627 F.3d 792, 800 (10th Cir.2010) ("[T]he Court suggested that the core purpose of the right was to allow 'law-abiding, responsible citizens to use arms in defense of hearth and home.' " (quoting Heller, 128 S.Ct. at 2821)), cert. denied,—— U.S. ——, 131 S.Ct. 2476, 179 L.Ed.2d 1214 (2011).

    It is plain that the interest in this instant matter advances in possessing firearms in the home is on all fours with the interest emphasized in Heller, namely, the plaintiff's desire to keep and bear rifles and shotguns in his home for personal protection. These interests are wholly distinct from the interests advanced in Hightower. In fact, the information before this Honorable Court establishes that the plaintiff herein is a law abiding citizen. Despite the defendants' mere belief that Plouffe "violated" M.G.L. c. 140 § 131L, there has been no judicial finding as such, and the defendant's own records strongly contradict that any such "violation" ever occurred. As such, the defendants' actions in the instant case impermissibly infringe upon the plaintiff's Second Amendment protections.

3. **The Defendants' Actions, M.G.L. c. 140 § 129B Notwithstanding, Violated the Plaintiff's Constitutional Rights Because an FID is a Shall Issue License and The Plaintiff Was Eligible to Hold Such License.**

    A. **The Firearms Identification Card – M.G.L. c. 140 s. 129B**

An FID is a "shall issue" license. M.G.L. c. 140 § 129B mandates that "[a]ny person…may submit to the licensing authority an application for a firearm identification card, or renewal of the same, **which the licensing authority shall issue**, unless the applicant [is otherwise disqualified from obtaining a firearms identification card for reasons set forth in M.G.L. c. 140 §129B(1)(i) et seq.]" Unlike the Commonwealth's laws regarding the issuance of a License to Carry Firearms (See, e.g., M.G.L. c. 140 § 131), an FID issued under M.G.L. c. 140 § 129B does not permit the exercise of discretion by the licensing authority on whether to issue, deny, suspend or revoke an FID. See, M.G.L. c. 140 § 131. An FID may only be revoked or suspended upon the occurrence of any event that would have disqualified the holder from being issued an FID. See, M.G.L. c. 140 s. 129B(1)(i) et seq. While Defendants portend that their interpretation of M.G.L. c. 140 s. 129B(1)(i) et seq is widely accepted, the opposite is the case. See Chief Ronald C. Glidden (Ret.) & Attorney John M. Collins, Law Enforcement Guide to Firearms Law 200-202, 204 (22nd ed. 2013) In statute and in practice, FID cards are not subject to restrictions nor subject to discretionary issuance.

    B. **The "Safe Storage Law" – M.G.L. c. 140 s. 131L**

Massachusetts Law makes it a crime to "store or keep any firearm, rifle or shotgun…in any place unless such weapon is secured in a locked container or equipped with a tamper-resistant mechanical lock or other safety device, properly engaged so as to render such weapon inoperable by any person other than the owner or other lawfully authorized user." See, M.G.L. c. 140 § 131L. A violation of § 131L shall be punished…by a fine of [up to $10,000] or by

imprisonment [for up to ten years], or by both such fine and imprisonment. See, M.G.L. c. 140 § 131L(d).

### C. The Defendants' Use of an Unsupported Violation of the "Safe Storage" Law As Grounds For Revoking the Plaintiff's FID Is Not Supported By Statute or the Constitution.

Defendants rely upon their contention that the plaintiff's FID was properly suspended because defendant MacDonald "found that [the plaintiff] had violated M.G.L. c. 140 § 131L. Historically, both state and federal courts have held that prior to depriving an individual of life or liberty for the commission of a crime, the government bears the burden of proving the criminal allegation in court. Additionally, an accused individual may not be compelled to be a witness against himself. See M.G.L. c. 263 § 6 (A person indicted for a crime shall not be convicted thereof except by…the judgment of the court), Massachusetts Declaration of Rights, Article XII (No subject shall be held to answer for any crimes or offence, until the same is fully and plainly, substantially and formally, described to him; or be compelled to accuse, or furnish evidence against himself…), and U.S. Const. Amend. V (No person…shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law). The Defendant's suggestion that the Plaintiff's constitutional rights may be stripped away upon "MacDonald's finding that Plouffe violated M.G.L. c. 140 § 131L" flies in the face of over 224 years of constitutional jurisprudence. It would seem from the defendant's motion to dismiss that MacDonald believes that he, in his capacity as the chief licensing officer for the Town of Dighton, may act as judge and jury with respect to a criminal allegation, particularly one completely unsupported factually by the observations of his own officers. At no time was a violation of §131L formally alleged by the Commonwealth or the District Attorney for the County of Plymouth, let alone proven beyond a reasonable doubt.

Further, the defendants' contention that the grounds upon which FID Cards may be suspended or revoked are broader than the grounds for denying an FID card at the time of the original application is without merit. "A Firearm Identification Card shall be revoked or suspended by the licensing authority or his designee upon the occurrence of any event that would have disqualified the holder from being issued such card or from having such card renewed or for a violation of a restriction provided for in this section." See, M.G.L. c. 140 § 129B. However, the language "restriction provided for in this section" does not mean that the licensing officer may act upon mere allegation of the violation of any law as grounds for suspension. Rather, "restrictions provided for" in § 129B(1)(i)-(ix) references such criminal convictions and non-criminal occurrences specifically provided for by the statute which would render the license holder statutorily ineligible to obtain (or retain) a firearms identification card. (See, e.g., M.G.L. c. 140 § 129B(1)(i) (License holder must reside or have a place of business within the jurisdiction of the licensing authority); Id. at (ii) (License holder may not be convicted or adjudicated delinquent of a felony, misdemeanor punishable by more than two years, conviction of a violent crime, violation of a law regarding the use, possession, ownership, transfer, purchase, sale, lease, rental, receipt or transportation of weapons or ammunition for which a term of imprisonment may be imposed, or violation of any drug law); Id. at (iii) (License holder may not have been confined to any hospital or institution for mental illness); (iv) (License holder may not have been under treatment for or confinement for drug addiction or habitual drunkenness); Id. at (v)-(vi) (License holder may not be less than 15 years of age, or is under 18 years of age with parent's consent); Id. at (vii) (License holder may not have been is an alien); Id. at (viii) (License holder is ubject to a restraining order); Id. at (ix) (License holder is not the subject of an outstanding arrest warrant). M.G.L. c. 140 § 129B(1)(i) makes no allowance for the suspension

or revocation of a FID upon anything less than a conviction or adjudication of a youthful offender or delinquent child. Id.

Additionally, M.G.L. c. 140 § 129B(3) specifically states that "[t]he licensing authority may not prescribe any other condition for the issuance of a firearm identification card". As such, the defendant is incorrect in his assertion that the law permits greater leeway in the application for, renewal of, or suspension of a firearms identification card.

Because the defendants ignored the requirements of M.G.L. c. 140 § 129B and revoked Plouffe's firearm identification and card in violation of state law, and because the defendants seized the plaintiff's firearms without cause, the plaintiff's Second Amendment protections have been violated, thereby entitling the plaintiff to relief from this Honorable Court.

### D. The Defendants' Own Records Demonstrate the Plaintiff Fully Complied With M.G.L. c. 140 § 131L.

The reports of the Dighton Police Department regarding the March 26, 2013 incident do not support the defendants' contention that the plaintiff violated M.G.L. c. 140 § 131L. The report states, in relevant part: "[Patrolman Nichols] checked the shotgun over and **there was a trigger lock and secured on the firearm as well as it was unloaded** [sic]." (Emphasis added). Sgt. David P. McGuirk's report further states that "[Patrolman] Nichols said the first thing he noticed was that a trigger/cable safety device was in place on the gun". Nevertheless, Sgt. McGuirk concludes that "On Wednesday, March 27, 2013 I spoke to Chief Robert L. MacDonald about this matter and **it was decided that [the plaintiff's] LTC/FID would be suspended and any possessed weapons would be seized**" (Emphasis added). A copy of the Police Reports compiled by Patrolman Nichols and Sergeant McGuirk are annexed hereto in support of this Motion as **EXHIBIT A**.

Defendant MacDonald suspended the plaintiff's FID on March 27, 2013, stating that the plaintiff "failed to store your firearm(s) as required under M.G.L. c. 140 § 131L", despite the fact that the defendants' own records indicate the plaintiff's shotgun was stored with a proper trigger lock and was unloaded. A copy of the March 27, 2013 suspension letter is annexed hereto in support of this Motion as **EXHIBIT B**.

### 4. Plouffe's Decision Not to Appeal the Suspension of His FID in State District Court is Not A Bar to His Pursuit of a 42 U.S.C. § 1983 Claim.

As an initial matter, [t]he right to judicial review of the constitutionality of state action is beyond question. Progressive Labor Party v. Lloyd, 487 F. Supp. 1054 - Dist. Court, D. Massachusetts 1980, citing Swann v. Adams, 385 U.S. 440, 87 S.Ct. 569, 17 L.Ed.2d 501 (1967). Further, exhaustion of administrative and judicial state remedies is not a prerequisite to a § 1983 action. Monroe v. Pape, 365 U.S. 167, 183 (1961) (exhaustion of judicial remedies is not a prerequisite); Patsy v. Florida Board of Regents, 457 U.S. 496, 501 (1982) (exhaustion is not a prerequisite to an action under § 1983). The Court has, on occasion, found that a plaintiff must first exhaust other administrative or judicial remedies before commencing a § 1983 action, particularly when required by legislation which underpins the plaintiff's claim. However, these situations reference ongoing criminal proceedings or requirements in the underlying law to exhaust administrative remedies.[6] The existence of concurrent state remedies is not a bar to a section 1983 action. Zinermon v. Burch, 494 U.S. 113, 124 (1990).

---

[6] See, Younger v. Harris, 401 U.S. 37 (1971) (a federal plaintiff is barred from seeking declaratory or injunctive relief relating to ongoing state criminal judicial proceedings); Heck v. Humphrey, 512 U.S. 477 (1994) (plaintiff must prove that a conviction or sentence has been reversed prior to recovering damages for unconstitutional conviction or imprisonment); 42 U.S.C. § 1997e (a prisoner's civil rights lawsuit may be delayed up to 180 days to require the prisoner to exhaust administrative remedies).

### 5. Due Process Was Insufficient As Applied To The Defendant Following the Suspension of Plaintiff's License.

If a license is suspended or revoked, the aggrieved individual may "file a petition to obtain judicial review in the district court" within ninety days after receiving notice of the revocation or suspension. M.G.L. c. 140, § 129B. Defendants incorrectly assert that that the obligation to turn over firearms is suspended during the pendency of an appeal (Citing Pasqualone v. Gately, 422 Mass. 398, 662 N.E.2d 1034, 1038-1039 (Mass. App. Ct. 1996). However, § 129B was amended in 1998 to specifically ensure the divestiture of firearms following the suspension of a license.[7]

The right to appeal the deprivation of a firearms license has been interpreted, in pre-Heller cases, as placing the burden of proof on the applicant to show that the licensing authority's decision "was arbitrary, capricious, or an abuse of discretion." Hightower v. City of Boston, 693 F.3d 64, 86 Citing Howard v. Chief of Police, 794 N.E.2d at 606 (quoting Chief of Police v. Moyer, 453 N.E.2d at 464) (internal quotation mark omitted); see also Godfrey v. Chief of Police, 616 N.E.2d at 488 (stating same standard); Ruggiero v. Police Commissioner, 464 N.E.2d at 107 (same). Although Plouffe did have the right to appeal the suspension of his FID under M.G.L. c. 140 § 129B, the stated ground for the suspension of Plouffe's FID was that he "[f]ailed to store [his] firearms properly under M.G.L. c. 140 § 131L". The pursuit of a state court appeal under § 129B would cause irreparable injury to the plaintiff, since as the appealing party, Plouffe would bear the burden of proving the truth or falsehood of the disqualifying event under M.G.L. c. 140 § 129B – namely, his innocence of the underlying criminal allegations raised by the Dighton Police Department – thereby forcing Plouffe to choose whether to enjoy his Fifth Amendment or Second Amendment protections, but not both.

---

[7] See, M.G.L. c. 140 § 129B(4): "No appeal or post-judgment motion shall operate to stay such revocation or suspension."

If the plaintiff's claims were to be analyzed in the context of a failure of substantive due process, the plaintiff must demonstrate that the defendant engaged in conduct that was "arbitrary, or conscience shocking, in a constitutional sense." Collins v. City of Harker Heights, Texas, 503 U.S. 115, 128 (1992). This form of due process has limited application, but, in contrast to procedural due process claims, the existence of adequate post-deprivation remedies does not bar a substantive due process claim. McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994). With respect to incorporated substantive due process, the plaintiff may state a claim by proving a violation of one of the Bill of Rights. The Supreme Court has held that one of the substantive elements of the Due Process Clause protects those rights that are fundamental--rights that are implicit in the concept of ordered liberty, and has, over time, held that virtually all of the Bill of Rights protect such fundamental rights and has likewise held that they apply to the states through the "liberty" interest of the Due Process Clause. Palko v. Connecticut, 302 U.S. 319, 325 (1937).

### 6. Suspending Plaintiff's FID Card in Violation of State Law Offends the Second Amendment

Plaintiff has made no claim questioning the constitutionality of M.G.L. c. 140 § 129B. On the contrary, the gravamen of Plaintiff's argument is that the actions of the defendants in suspending plaintiff's "shall issue" FID card in contravention to state statute are the violations of the plaintiff's Second Amendment protections. It is conceded that a statute which leaves no discretion on the part of a state actor to limit a protected right may be constitutional, provided it is administered in a fair and non-discriminatory manner. See, Cox v. New Hampshire, 312 U.S. 569, 577, 61 S.Ct. 762, 85 L.Ed. 1049 (1941). Conversely, the illegal and discriminatory application of an otherwise constitutional law would serve as an improper infringement on a protected right. C.f., Id at 577. The same analysis applies in the instant case. The Massachusetts FID law mandates the issuance of the license; the license may be only denied pursuant to the

requirements of M.G.L. c. 140 § 129B(1)(i)-(ix), none of which are applicable in the instant case. As such, the only result which can flow from the defendants' actions is a violation of the plaintiffs Second Amendment protections.

The actions of the defendant, under color of authority as the licensing officer responsible for plaintiff's FID card, in suspending the license based on a clearly erroneous basis was the violation of plaintiff's Second Amendment rights. The defendant was in possession of, and ostensibly relied upon, the police reports showing the shotgun was locked at all times when suspending Plaintiffs FID card and subsequently seizing plaintiff's property. Said violation of the plaintiff's Second Amendment protections serves as the basis for his claim under 42 U.S.C. § 1983.

**7. If Necessary, Plaintiffs Respectfully Request and Opportunity to Amend the Complaint.**

If the Court feels it necessary, Plaintiffs respectfully request leave of this Honorable Court to provide the plaintiffs an opportunity to amend the complaint.

## CONCLUSION

The plaintiff is entitled to relief by this Honorable Court because there was a violation of the Second Amendment in that: (a) the plaintiff is entitled to the protections of the Second Amendment as articulated under <u>Heller</u>, limitations on that protection set forth in <u>c.f.</u>, <u>Hightower</u> notwithstanding; (b) the defendants ignored the requirements of M.G.L. c. 140 § 129B and revoked Matthew P. Plouffe's firearm identification card violating state law, and (c) the defendants seized the plaintiff's firearms under the color of authority by the inappropriate suspension of his firearm identification card.

WHEREFORE, Defendant Town of Dighton and Robert L. MacDonald's motion to dismiss must be denied.

| | |
|---|---|
| Dated: October 30, 2013 | Respectfully submitted,<br><br>Matthew P. Plouffe and<br>Commonwealth Second Amendment, Inc.<br>by their attorney,<br><br> /s/ Matthew P. Trask<br>Matthew P. Trask, Esq.<br>BBO #: 673733<br>Kelsey & Trask, P.C.<br>160 Speen Street | Suite 202<br>Framingham, MA 01701<br>T: 508.655.5980<br>F: 508.655.5981<br>Email: mtrask@kelseytrask.com |

## CERTIFICATE OF SERVICE

 I, Matthew P. Trask, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants on October 30, 2013.

| | |
|---|---|
| Dated: October 30, 2013 | /s/ Matthew P. Trask<br>Matthew P. Trask |