UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-12322-RGS

MATTHEW P. PLOUFFE and
COMMONWEALTH SECOND AMENDMENT, INC.

v.

TOWN OF DIGHTON and
ROBERT L. MACDONALD,
in his official capacity as
Chief of the Dighton Police Department

MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION TO DISMISS

November 26, 2013

STEARNS, D.J.

This case raises a Second Amendment challenge to the licensing scheme of the Massachusetts Gun Control Act of 1998. Plaintiff Matthew Plouffe is a nineteen-year-old resident of Dighton, Massachusetts, who possessed a valid Firearm Identification Card (FID) issued under Mass. Gen. Laws ch. 140, § 129B, until it was suspended by defendant Robert L. MacDonald, the Dighton Chief of Police. Chief MacDonald now moves to dismiss the Complaint, principally on the ground that there was no Second Amendment infirmity in his decision to suspend Plouffe's FID.

**Statutory Background**

An FID is one of three classes of licenses that regulate the ownership and possession of firearms by Massachusetts residents. An FID authorizes the holder to possess non-large capacity rifles and shotguns, and associated ammunition. The FID, unlike the Class A and Class B permits, does not authorize the carrying of a firearm.[1] Mass. Gen. Laws ch. 140, § 129B(6).[2]

An FID on proper application must be granted by the licensing authority (typically the chief of police) having jurisdiction over the place of issue. Mass. Gen. Laws ch. 140, § 129B(1). The application may be denied only if the

---

[1] "Firearm" is a term of art in the Gun Control Act and is defined as "a pistol, revolver or other weapon of any description, loaded or unloaded, from which a shot or bullet can be discharged and of which the length of the barrel or barrels is less than 16 inches or 18 inches in the case of a shotgun as originally manufactured; provided, however, that the term firearm shall not include any weapon that is: (i) constructed in a shape that does not resemble a handgun, short-barreled rifle or short-barreled shotgun including, but not limited to, covert weapons that resemble key-chains, pens, cigarette-lighters or cigarette-packages; or (ii) not detectable as a weapon or potential weapon by x-ray machines commonly used at airports or walk-through metal detectors." Mass. Gen. Laws ch. 140, § 121.

[2] A Class A license permits its holder to possess and carry all types of firearms, including large capacity weapons, "for all lawful purposes." A Class B license permits its holder to possess and carry non-large capacity firearms and large capacity rifles and shotguns. A Class B licensee (unlike a holder of a Class A permit) is not permitted to carry or possess a loaded firearm "in a concealed manner in any public way or place." Mass. Gen. Laws ch. 140, § 131 (b). The licensing authority may issue Class A and Class B licenses subject to any restrictions the authority "deems proper." *Id*. at § 131(b)(ii).

applicant is subject to one or more of the disqualifications governing the granting of a Class A or Class B license, although an exception is made for an otherwise qualified minor (like Plouffe) who is over eighteen years of age (or a qualified minor between ages fifteen and eighteen who has the written permission of his or her parent or guardian). Mass. Gen. Laws ch. 140, § 129B(1)(vi).[3] In issuing an FID, unlike the case with a Class A or Class B license, the licensing authority may not impose any special restriction on the grantee. Mass. Gen. Laws ch. 140, § 129B(3).[4]

---

[3] A Class A or Class B license may not be issued to any person who: (1) has been convicted (as an adult or juvenile) of a felony, a misdemeanor punishable by imprisonment for more than two years, a "violent crime" as defined in section 121, a crime involving the use or sale of firearms, or a violation of any criminal provision of the firearms law or the Controlled Substances Act; (2) has been committed for treatment for mental illness (unless a registered physician attests that the applicant is currently not mentally disabled); (3) has been treated for drug or alcohol addiction (unless a physician attests that five years have elapsed since such treatment and that the applicant is recovered); (4) is under age twenty-one; (5) is an alien; (6) is the subject of a temporary or permanent domestic abuse protection order; or (7) is the subject of an outstanding arrest warrant. Mass. Gen. Laws ch. 140, § 131(d).

[4] An applicant aggrieved by a denial of an application for an FID or by its suspension or revocation may within ninety days seek review in the District Court having jurisdiction over the Town where the applicant resides. A Justice, after a hearing, may order the FID issued or reinstated if he or she finds that the petitioner is not prohibited by law from possessing an FID ( or in the case of a license, that there were no reasonable grounds to justify the licensing authority's action). Mass. Gen. Laws ch. 140, § 129B(5); § 131(f). The District Court proceedings "are narrow in scope" and confined to the issue of, whether

**Legal Standard**

To survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 555 (internal citations omitted). On the other hand, a court may not disregard properly pled factual allegations, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Id.* at 556.

**Factual Background**

As alleged in the Complaint, Plouffe was stopped by a Dighton patrolman on the afternoon of March 26, 2013. The officer observed an unloaded shotgun in the back seat of Plouffe's vehicle. The shotgun was secured by a cable trigger

---

on all of the facts, the decision of the permitting authority to revoke the license was reasonable. *Godfrey v. Chief of Police of Wellesley*, 35 Mass. App. Ct. 42, 45 (1993). The Court is not required to observe the formalities of a trial; the touchstone for the admission of evidence is simply its relevance. *Chief of Police of Shelburne v. Moyer*, 16 Mass. App. Ct. 543, 547 (1983). The appellant has the burden of producing "substantial evidence" demonstrating that the revocation decision "was arbitrary, capricious, or an abuse of discretion." *Godfrey*, 35 Mass. App. Ct. at 47. An appeal of a District Court judge's decision may be taken to the Superior Court by way of an action in the nature of certiorari pursuant to Mass. Gen. Laws ch. 249, § 4. *Id.* at 45-46.

lock as required by Mass. Gen. Laws ch. 140, § 131L(a). The officer took the shotgun from the car, but after Plouffe produced his FID, returned it to Plouffe. Later that day, a Dighton police sergeant reviewing the patrolman's report added a "supplement," questioning Plouffe's maturity in choosing to engage in target shooting with other minors, some younger than he. The next day, Chief MacDonald, acting on the recommendation of the sergeant, suspended Plouffe's FID and ordered his firearms (two shotguns and a musket) confiscated. The stated reason for the suspension was the "failure to [properly] store your firearm(s)" as required by law. Plouffe has not been charged under the Safe Storage Law nor does the March 26, 2013 police report factually support the Chief's decision. Plouffe did not appeal the suspension to the state District Court, but instead filed this lawsuit in the federal district court.[5]

**Constitutional Background**

---

[5] Plouffe is correct that, under the circumstances of this case, he is not required to exhaust administrative remedies before seeking relief under 42 U.S.C. § 1983. *See Patsy v. Florida Bd. of Regents*, 457 U.S. 496, 501 (1982); *Monroe v. Pape*, 365 U.S. 167, 183 (1961). Had Plouffe sought relief in the state courts, it is unlikely that this court would have the jurisdiction to intervene. "As courts of *original* jurisdiction, federal district courts sitting in diversity jurisdiction do not have appellate power, nor the right to exercise supplementary equitable control over original proceedings in the state's administrative tribunals." *Armistead v. C&M Transport, Inc.*, 49 F.3d 43, 47 (1st Cir. 1995). *See also Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); *D.C. Ct. of App. v. Feldman*, 460 U.S. 462 (1983) (collectively, the *Rooker-Feldman* doctrine).

Article 17 of the Massachusetts Declaration of Rights does not guarantee an individual's right to possess and bear arms except when called to service in a duly constituted militia. *See Commonwealth v. Davis*, 369 Mass. 886, 887-888 (1976). The Second Amendment, on the other hand, "codifies a 'right of the people'" as individuals "to possess and carry weapons in case of confrontation" in the defense of "hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 579, 592, 599 (2008) (overturning a local ban on possession of an operable firearm in one's own home for purposes of self-defense). The view taken by most federal courts post-*Heller*, that "[i]t is settled law . . . that the Second Amendment applies only to limitations the federal government seeks to impose on [the right to bear arms]," *Maloney v. Cuomo*, 554 F.3d 56, 58 (2d Cir. 2009) (*per curiam*), was repudiated by the Supreme Court in *McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010). *McDonald* struck down a Chicago ordinance that effectively banned the possession of handguns by City residents. While rejecting the petitioners' principal argument that the right to bear arms is guaranteed by the Fourteenth Amendment's Privileges or Immunities Clause, the Court in an opinion by Justice Alito held that the Due Process Clause of the Fourteenth Amendment, by incorporation, makes the Second Amendment right binding on the States. In deciding that the right to bear arms is "'fundamental' to the *our* scheme of

ordered liberty" and is "deeply rooted in this Nation's history and tradition," Justice Alito found this to be especially true of handguns "because they are the 'the most preferred firearm in the nation . . . for protection of one's home and family.'" *Id*. at 3036 (internal citations omitted).

**The Complaint**

It must first be stated what Plouffe is *not* seeking in his Complaint. He does not (and could not creditably) raise a constitutional challenge to the Massachusetts Gun Control Act.[6] He does not challenge the constitutionality

---

[6] Writing for the majority in *Heller*, Justice Scalia cautioned that: "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sales of arms." 554 U.S. at 626-627. Echoing Justice Scalia, in *McDonald* Justice Alito iterated "assurances" that the Court's ruling was not intended to cast doubt on laws regulating the commercial sale of firearms or their possession by felons and the mentally ill, or the carrying of firearms in "sensitive" places. "Despite municipal respondents' doomsday proclamations, incorporation does not imperil every law regulating firearms." *McDonald*, 130 S. Ct. at 3047. *See also Commonwealth v. Powell*, 459 Mass. 572, 589-591 (2011) (suggesting no constitutional infirmity in the fact that the Massachusetts licensing scheme bans the issuance of licenses to carry firearms to persons under age twenty-one); *Commonwealth v. Police Comm'r of Boston*, 465 Mass. 314, 327-328 (2013) (rejecting a Second Amendment challenge based on *McDonald* and *Heller* to the state firearms licensing scheme and its disqualifications); *Commonwealth v. Perez*, 80 Mass. App. Ct. 271, 282 (2011) (noting that both *Heller* and *McDonald* expressly affirmed the right of States to regulate the possession of firearms outside the home with "appropriate licensing requirements"). *See also United States v. Rene E.*, 583 F.3d 8, 12 (1st Cir. 2009) (upholding the firearms restrictions imposed by the federal Juvenile

of the Safe Storage Law, Mass. Gen. Laws ch. 140, § 131L. He does not challenge the disqualifications for possession of an FID that are set out in Mass. Gen. Laws ch. 140, § 131(d). And finally, I do not understand Plouffe to challenge defendant's argument that a violation of the Safe Storage Law would qualify as a violation of a disabling "restriction provided for in this section," Mass. Gen. Laws ch. 140, § 129B(4), that would disentitle the holder of an FID from possessing a rifle or shotgun "in such a manner that is, otherwise prohibited by law." Mass. Gen. Laws ch. 140, § 129B(6). The relief that Plouffe plausibly seeks from this court is a declaration that the assumption by a licensing authority of the discretionary right to suspend an FID for a reason that is not enumerated in Mass. Gen. Laws ch. 140, § 131(d), and further, is not charged or adjudicated under the Safe Storage Act, Mass. Gen. Laws ch. 140, § 131L, violates both due process and a person's Second Amendment right to bear arms. *Cf. Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 572-573 (1995).

## ORDER

Because the Complaint can be read to state a plausible claim for

---

Delinquency Act based on "a longstanding tradition of prohibiting juveniles from both receiving and possessing handguns"); *Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 349 (5th Cir. 2013) (same, restricting right of juveniles to carry handguns in public).

declaratory relief, defendant's motion to dismiss will be <u>DENIED</u>.[7] The parties will file a joint statement within fourteen (14) days proposing a schedule for discovery (should discovery be required) or for the filing of further dispositive motions.[8]

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE

---

[7] The court takes no position at present on whether co-plaintiff Commonwealth Second Amendment, Inc., has standing to pursue declaratory and injunctive relief on behalf of its members or shareholders. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). *Compare Pharm. Care Mgt. Ass'n v. Rowe*, 429 F.3d 294, 313-314 (1st Cir. 2005).

[8] Given the present posture of the case, the court need not now address the standard of review to be applied. *Cf. Woollard v. Gallagher*, 712 F.3d 865, 876 (4th Cir. 2013).